**In the Matter of the ESTATE of Glenn C. SHAW, Deceased.**

**No. 52909.**

Court of Appeals of Oklahoma, Division No. 1.

Oct. 14, 1980.

Released for Publication by Order of Court of Appeals Nov. 13, 1980.

Mary Bailey, Fairview, and Robert D. McPherson, Pampa, Tex., and Jesse D. Swift, Sand Springs, for appellants.

Watson & Watson by Doyle Watson, Drumright, for appellee.

BOX, Judge:

An appeal by the collateral heirs of Glenn C. Shaw, deceased, from an order directing the distribution of the residue of Shaw's estate to a charitable foundation pursuant to the provisions of Shaw's will.

Glenn C. Shaw died on March 17, 1975. A duplicate executed copy of his last will and testament, dated August 10, 1972, was admitted to probate pursuant to a decision of the Oklahoma Supreme Court. *In re Estate of Glenn Shaw*, 572 P.2d 229.

The will provided that after the payment of all the debts, expenses of the last illness,

and the costs of estate administration the residue of the estate, including all real and personal property, was to pass to his sister, Abby Tarr, if she survived him. In the event that Abby Tarr preceded her brother in death, the residue of Shaw's estate was devised and bequeathed to the Abby Tarr–Glenn C. Shaw Foundation, a charitable, educational, and benevolent corporation.

The Abby Tarr–Glenn C. Shaw Foundation was not in existence at the time the will was executed or at the time of the testator's death. Subsequent to Shaw's death, his attorney, Doyle Watson, did file incorporation papers with the Secretary of State and the foundation was established as a non-profit corporation. A certificate of incorporation was issued on May 21, 1975. Later, the articles of incorporation were amended to effectuate a tax exempt status in compliance with the Internal Revenue Service guidelines. The amended articles were filed on June 24, 1976.

Abby Tarr preceded Shaw in death. A hearing on the final accounting and petition for distribution of the Shaw estate resulted in a decree entered September 29, 1978, directing distribution of the residue of Shaw's estate to the Abby Tarr–Glenn C. Shaw Foundation. The heirs appeal from this determination.

The sole error alleged on appeal is that the devise or bequest to a non–existent charitable corporation is invalid and fails. The heirs assert that a testamentary disposition is presumed to take effect upon the death of the testator. Since there was no entity in existence at that time, which could take the property as directed by the will, the devise failed, and the residue of the estate should pass by intestate succession.

■ The paramount consideration in construing a will is to ascertain the intent of the testator and to give effect to that intention as nearly as possible. *Bridgeford v. Estate of Chamberlin*, Okl., 573 P.2d 694, 696; 84 O.S. 1971, § 151. In ascertaining the testator's intent the will is to be considered as an integrated whole giving consideration to the relationship of all the provisions to the whole. *In re Estate of Hay-hurst*, Okl., 478 P.2d 343, 346; *Kyser v. Reed*, Okl., 442 P.2d 339, 342.

■ Under Oklahoma law testamentary dispositions are presumed to vest and take effect at the testator's death. *Hein v. Hein*, Okl., 431 P.2d 316, 320; *In re Estate of Daniels*, 401 P.2d 493, 498; 84 O.S. 1971, § 175. Testamentary dispositions may be made to any person who is capable under law of taking the property. But a corporation cannot take under a will unless it is authorized to do so by statute or by express provision in its charter. 84 O.S. 1971, § 45. Under 18 O.S. 1971, § 543 a charitable corporation is authorized to take real and personal property under a will. *Johnstone v. Patterson*, 418 P.2d 656, 659. Under these authorities, then, the corporation had to be in existence at the time of the testator's death to receive the devise and bequest, unless the doctrine of "*cy pres*" is applicable to save the devise and bequest.

*Cy pres* is defined as a "doctrine that equity will, when a charity is originally or later becomes impossible, inexpedient, or impracticable of fulfillment, substitute another charitable object which is believed to approach the original purpose as closely as possible." G. Bogert, Trusts and Trustees § 431, at 490 (rev. 2d ed. 1977).

■ Oklahoma has expressly provided for the use of the *cy–pres* doctrine in 60 O.S. 1971, § 602. With respect to the facts of this case section 602 allows a court of general equitable jurisdiction to order the administration of a devise or bequest to charity as nearly as possible to fulfill the general charitable intention of the testator. Section 602 is applicable "if the settlor or testator manifested a general intention to devote the property to charity." This requirement has been interpreted to mean that the instrument creating the devise or bequest evidence that the testator intended to aid charity in general rather than a narrow intent to aid a single charitable project and nothing else. G. Bogert, Trusts and Trustees § 436, at 525 (rev. 2d ed. 1977).

A charitable trust can be created only if the transferor properly manifests an intention to create one, but no particular form of words or conduct is necessary to denote the intent to create, and a trust can be created without the use of the word trust or trustee. Restatement (Second) of Trusts § 351, Comment b (1957). The testator must restrict the use of the property transferred to general charitable uses. *See* Restatement (Second) of Trusts § 351, Comment d (1957).

The Oklahoma Supreme Court has not had occasion to address the applicability of the *cy pres* doctrine. This Court utilized the doctrine to validate the devise of property to an unincorporated charitable association, which was incorporated after the testator's death. *In re Estate of Anderson*, Okl.App., 571 P.2d 880. We recognized that Oklahoma follows the general rule that an unincorporated association has no legal existence to hold real property in its own name absent statutory authority. 571 P.2d at 882. However, we found that "when property is bequeathed or devised to an unincorporated association the implication of a trust best effectuates the intent of the testator and is in accord with the general philosophy of the cy pres doctrine." 571 P.2d at 883. Clearly in *Anderson* the bequest was at least to an entity in existence prior to testator's death, whereas, in this case the entity to receive the property had no legal existence until after the testator's death. However, we do not think that this distinction removes the present case from 60 O.S. 1971, § 602.

In comment *o* of section 399 of the Second Restatement of Trusts the following principle is stated:

*Gift to corporation or association.* If a testator devises or bequeaths property to a charitable corporation or association which refuses to accept the devise or legacy, or which is incapable of taking or holding it, or which is not in existence, the disposition will not fail if the testator manifested an intention to devote the property to charitable purposes and not merely to make a gift to the particular corporation or association. [Citations omitted.]

This principle has two essential requirements. The first is that the gift be charitable in nature intending to benefit an indefinite class or a whole community. Secondly, it requires that the testator's predominant intent be to carry out a charitable purpose. The application of the doctrine makes the instrument effectuating the purpose a secondary consideration. *In re Estate of Lamb*, 19 Cal.App.3d 859, 97 Cal.Rptr. 46, 50 (1971); *Hinckley v. Caldwell*, 35 Ill.App.2d 121, 182 N.E.2d 230, 235 (1962); *In re Briggs Estate*, 189 Wis. 524, 208 N.W. 247, 249–50 (1926); *accord, National Ass'n For Cerebral Palsy, Inc. v. United Cerebral Palsy Ass'n*, 141 Colo. 69, 346 P.2d 582 (1959). This interpretation is also in accord with the express language of 60 O.S. 1971, § 602.

The following sections of the will in question bring this case within the intended purpose of the *cy pres* doctrine as expressed in 60 O.S. 1971, § 602. The following is a paragraph from section 5 of the will:

It is my intention that in the event my sister, Abby Tarr precedes me in death, that none of my estate shall go to any other relative or heir irrespective of their relationship to me, but in the event any individual should prove themselves to be an heir at law and entitled to any portion of my estate then and in such event, I give, devise and bequeath to each such individual or individuals the sum of One Dollar only, it being my intention and desire that if my sister, Abby Tarr, does not survive me, that my entire estate should go to the above named foundation to be used for charitable, educational and benevolent purposes as set out in the By–Laws and Articles of Incorporation of said foundation to the memory of Abby Tarr and Glen C. Shaw.

Section 6 reads:

I specifically direct that Doyle Watson, Attorney at Law, of Drumright, Oklahoma, if he be available to do so, shall be employed by my executor or executrix and that he shall handle any and all legal proceedings in connection with the Pro-

bate of this Will and *all other legal proceedings re the handling of my said estate including all legal and management services in connection with the handling of the Abby Tarr–Glen C. Shaw Foundation.* [Emphasis added.]

In section 5 of the will the testator has clearly expressed an intent that no heirs of his other than his sister share in his estate. In *Bridgeford v. Estate of Chamberlin*, 573 P.2d 694, the Supreme Court interpreted a similar clause to be more than a mere no contest clause. In that case a daughter challenged a will as a pretermitted heir. The court found that the testator, who provided in his will that should any person save the person named to take in his will challenge the distribution of his estate, such person was to receive $5.00 and no more, had evidenced an unambiguous intention to disinherit any heir besides the named heir. 573 P.2d at 696. The court further stated that even if the daughter could prove her relationship to the testator, she could only receive the $5.00. The rationale of that case is equally applicable in this case. The collateral heirs are only entitled to receive $1.00 each if the devise to the charitable foundation fails, the residue of the estate under the facts of this case would then escheat to the state. But this construction of the will would totally fail to carry out the clear intent of the testator.

The foundation is referred to in the will as charitable, educational, and benevolent. Oklahoma recognizes a gift to charity, education, or a benevolent society as a gift to charity. 60 O.S. 1971, § 601; *also see* Restatement (Second) of Trusts § 368 (1957). The language of the will does not restrict the number of persons the gift is to benefit. Therefore, we find that the will unambiguously shows an intent to benefit charity in general and the doctrine of *cy pres* should be applied to carry out the intent of the testator in keeping with the general rules of will construction.

The will also provides a means to effectuate the testator's intent through section 6. The testator's attorney is granted power to handle the legal and management aspects of the foundation. It is of no importance under the circumstances here that the foundation came into legal existence after the testator's death, because the foundation was merely a means of carrying out the express intent of the testator rather than a specific limited entity designated to take the bequest and devise to the exclusion of all others. The general charitable intent of the testator is effectuated by allowing the now existent corporation to perform its duties as set forth in the amended articles of incorporation. Therefore, we affirm the judgment of the trial court and remand with instructions to distribute the residue of Glenn C. Shaw's estate to the Abby Tarr–Glenn C. Shaw Foundation. We assess costs of this appeal to the Appellants.

AFFIRMED AND REMANDED WITH INSTRUCTIONS.

REYNOLDS, P. J., and ROMANG, J., concur.